THE CINCINNATI INSURANCE CO. v. RIEMAN & SONS.

1. A proposition made by A to insure on account of B C, an invoice of merchandize, amount insured, in case of loss, to be paid to A and D, when embraced in a policy, covers only the interest of B C.

2. When payment has been made to a person on account of a just debt, and there is no fraud, express or implied, between the parties, no action will lie to recover back in behalf of the payer.

3. Where insurance is taken upon merchandise by A for, and on account of whom it may concern, the risk attaches only to the interest of the party actually intended to be covered at the time the contract was made.

GENERAL TERM.—Proceeding in error to reverse a judgment rendered in favor of the defendants below by Gholson, J., at the special term of March, A. D. 1857.

The record in this case presents the following facts:

On the 8th of January, 1852, the plaintiff, on the application of J. H. Rieman, one of the defendants, insured $5,205 " on candles, on account of Smith & Kissane, from Cincinnati to New Orleans; loss, if any, payable to J. H. Rieman & Sons." At the time the risk was taken, a bill of lading for six hundred boxes of candles was exhibited to the plaintiff, signed by the clerk of the steamboat " Martha Washington," purporting to have been received on board that vessel. At the same time, Smith & Kissane had drawn upon Rieman & Sons, who had agreed to accept their bill at ninety days, for $3,360.

On her passage to New Orleans, the steamboat and cargo were totally consumed. When the information of her loss was received by Rieman & Sons, they made application to the plaintiff to adjust their loss, who, without requiring any other evidence, on March 4, 1852, paid defendants $2,500, and on April 6, $2,705, being the full amount of sum insured.

In March, 1855, the plaintiff filed its petition against the defendants, claiming that Smith & Kissane had committed a great fraud upon the underwriters; that the prop-

erty alleged to have been shipped on the steamboat, and for which the bill of lading was given, had never been delivered, nor was it in existence, either at the time the risk was taken, or when the loss occurred; that the insurance was made for the benefit of the defendants, who were in reality the parties covered by the policy, and as the alleged loss had been paid, without the knowledge, on the part of the defendants, of the fraud in the shipment, they have now the right to recover it back.

The defendants deny the important averments in the petition, and insist the risk was taken, and the proposition to insure made in good faith; that J. H. Rieman acted solely as the agent of Smith & Kissane, for whose benefit alone the insurance was made, no interest of the defendants being covered thereby; that the money was paid to the defendants, as required by the policy, without objection by the plaintiff, who knew that the defendants were acting as agents only; that, shortly after the receipt of the money, the defendants adjusted finally their accounts with Smith & Kissane, and paid them the balance of the cash received from the plaintiff; that, from that period until the commencement of this action, they were not notified of the alleged fraud on the part of the insured.

To this answer the plaintiff demurred. The judge before whom the question was argued at special term, overruled the demurrer, and gave judgment for the defendants.

*Henry Stanberry* and *Jones & Ware,* for plaintiff in error.

*Taft, Key & Perry,* for defendants in error.

STORER, J., delivered the opinion of the court.

The only real question involved in this controversy, is admitted by the counsel to be this: Whose interest is covered by the policy? And we may extend the inquiry further: Whose interest was intended to be covered when the risk was taken?

It is said by the plaintiff's counsel that the defendants, by

one of the members of their firm, though nominally appearing to have effected the insurance as agents, were in reality principles, and their interest in the shipment for the advance made to Smith & Kissane was therefore covered.

This assumption is attempted to be justified by the analogy which is declared to exist between a case where a broker obtains insurance in his own name for the benefit of his principals.

It is true, as a general rule, that the underwriters may hold the broker personally liable for the premium, though he has no interest in the subject insured, but it is equally true that there can be no recovery where the policy issues in his name, unless he prove his interest at the time the risk was taken as well as when the loss occurred. In every case where the policy is taken, in the name of the broker, for those "whom it may concern," and the interest is in another person, that person alone can claim the benefit of the indemnity.

By the express terms of the contract between the plaintiff and Rieman, the risk was upon the property owned by Smith & Kissane, and on their own account. An agency is therefore apparent, inasmuch as one party applies for insurance for another, and the application is accepted.

The law is settled that where the insurance is for the applicant and "whom it may concern," the terms thus employed are not intended to mean, nor do they include, every person who may have an interest in the subject insured, but only such as are in contemplation of the contract. 1 Arnold, §19; 1 Phillips on Ins. §153; 1 Mason, 136, *Seamans* v. *Loring;* 11 Rob. La. 82, *Lambeth* v. *Wes. Fire Ins. Co.;* 3 Johns. Cases, 269, *Steinback* v. *Rhinelander.* It is necessary, therefore, that the party in interest should have directed the risk to be taken, or ratified the act of the agent after the policy issued, to make the contract available to him.

But when the description of the party insured indicates that the agent has taken the policy for account of, or for the benefit of other persons specially named, the interest of

those thus described is alone covered. No other person can aver an interest, or sustain an action to recover its value. This is held in 4 Mass. 84, *Russell* v. *New England Ins. Co.*; 6 Mass. 81, *Pearson* v. *Lord;* 3 Johns. Cases, 130, *Kemble* v. *Rhinelander.*

We can find no exception to the rule thus affirmed, and it is but a corollary from that which is applied where the policy contains the clause "for whom it may concern," as in the last case, the real party interested need not be known until a loss occurs, when proof of his interest and agreement to the contract may then be had, so in the former, where the parties are actually described, there can be no resort to parol evidence to include others not named. If such a course were permitted, the whole theory of the law, as to the conclusiveness of written agreements upon the parties who have executed them, would be practically ignored, and the liability of those who have contracted would no longer be determinable by what is written; but rather, by what, in these days of the largest liberty in testifying, may be established by witnesses.

We can not so understand the law. We must hold, therefore, that the plaintiff insured for the benefit of Smith & Kissane; and, although since the alleged loss, the amount insured was paid to the defendants, for and on account of the real parties, yet, if that money has been applied to the payment of the advances made to Smith & Kissane, by their consent, it is equivalent to a payment made by them through their agents; the retention by the agent of so much money as would be sufficient to discharge the debt due by the principal, must be regarded as a payment by the principal to the agent, when the sum is retained by the consent of the principal.

It is admitted by the demurrer, that such an appropriation of the sum paid, by the plaintiff to the defendants, was made, and the residue accounted for with Smith & Kissane. The money paid to the defendants is no longer in their hands; they have discharged themselves from their agency to their principals, and can not be said to sustain any such relation to the plaintiff as will authorize the assumption that such

a privity exists as will permit a reclamation by the underwriters.

If, while the money was in the possession or under the control of the defendants, this action had been brought, a different question might have been presented. The investigation would have assumed another shape, and the difficulties that now meet the plaintiff, in a great measure, obviated.

There is no intimation, in the pleadings, that the defendants were implicated with Smith & Kissane, in the alleged fraud, or had notice, even, of the charge, before their agency was closed; it can not, therefore, be claimed that their situation should be changed, when, after a lapse of nearly four years, the parties really in fault, if at all, have, it is admitted, either left the country or become insolvent. It would be unjust to compel the defendants, under such circumstances, to refund the amount paid upon the policy, when their remedy over upon the guilty parties would be of no avail.

We believe we but indicate an established principle when we hold the defendants are not responsible in this action; it is but the application of the universal rule as to payments made upon checks, bills, or notes, where the security may be forged, if the holder obtains it in the usual course of business, and receives the proceeds, in good faith, without notice of their invalidity.

If, instead of directing the amount of the alleged loss to be paid to the defendants, in the policy itself, Smith & Kissane had drawn their bill in the defendants' favor, it could not be claimed that, under the circumstances disclosed in the case, the plaintiff, after having honored the bill by acceptance, or payment, would be permitted to impeach it.

There can be no practical difference between the case thus stated, and the present. In both, the acts of the parties, performed in good faith, conclude them. It was very justly remarked by Tilghman, C. J., 6 S. & R. 368, *Bogart, et al.* v. *Nevins, et al.*: "That no case has been shown where an action for money had and received, has been supported against a person who had received a just debt without fraud;"

and this we have always understood, is the true principle upon which the action is allowed. The question is, has the plaintiff the right to recover *ex æquo et bono?* If he ought not in equity to assert his claim, he will not be permitted to do so at law.

On the whole case, we are satisfied the judgment of the court of special term ought to be affirmed.

Judgment affirmed.